UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| MATTHEW DAKOTA WARREN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:20-CV-112-REW |
| v. ) | |
| ) | OPINION & ORDER |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Matthew Dakota Warren appeals the Commissioner's denial of his application for disability insurance benefits (DIB) and supplemental security income (SSI). DE 1. The parties filed dueling motions for summary judgment. DE 22 (Plaintiff's Motion for Summary Judgment); DE 26 (Defendant's Motion for Summary Judgment). The full record appears at DE 15-1. The Court **DENIES** DE 22, **GRANTS** DE 26, and **AFFIRMS** the ALJ's decision.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Warren is currently 29 years old. *See* R. at 637 (noting Warren's birthday). He alleges disability beginning on September 1, 2015. R. at 637, 645. Warren applied for DIB and SSI benefits in January 2017. The SSA denied his claims initially on February 9, 2017, R. at 498, 511, and upon reconsideration on August 24, 2017. R. at 529, 542. Warren requested a hearing September 11, 2017, R. at 577, and ALJ Jonathan H. Leiner held a hearing on August 15, 2018. At the hearing, Michael Taylor represented Warren. R. at 253. Plaintiff, Maria Warren (Plaintiff's mother), and impartial vocational expert (VE) Betty Hale testified. R. at 251–52. ALJ Leiner

1

subsequently denied Warren's claims on February 7, 2019. R. at 139. The Appeals Council denied review, and thus upheld the ALJ's decision, on March 24, 2020. R. at 1.

The ALJ made several particular findings in the required sequence.[1] He determined that Warren had not engaged in substantial gainful activity since his September 1, 2015, alleged onset date. R. at 145. The ALJ next determined that Warren had severe impairments: schizophrenic disorder, poly-substance abuse and dependence, and a substance-induced mood disorder. *Id.* ALJ Leiner then found that Warren did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ further made an initial residual functional capacity (RFC) finding. R. at 145–46. ALJ Leiner found that Warren was unable to perform any past relevant work. R. at 146. The ALJ, with VE testimony in support, also found that, given Warren's particular characteristics and RFC at this stage, there are no jobs, existing in significant numbers in the national economy, that Warren can perform. R. at 147. Based on these initial considerations, the ALJ ruled that Warren was under a disability from September 1, 2015, through the date of the decision. *Id.*

However, proceeding under 20 C.F.R. § 404.1535, the ALJ then went back to Step 2 to determine whether Warren's substance abuse was a contributing factor material to the determination of disability. Absent the substance abuse, the ALJ still found Warren's remaining impairment (the schizophrenic disorder) to be severe. R. at 147. ALJ Leiner then found that Warren did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1. *Id.* The ALJ made a final RFC finding, this time exclusive of the substance abuse disorders. R. at 148–50. ALJ Leiner found that Warren

---

[1] The ALJ—as a preliminary predicate for a period of disability (per 42 U.S.C. § 416(i)(2)(c)) and disability benefits (per 42 U.S.C. § 423(a)(1)(A))—found that Warren satisfied the §§ 416(i)(3) & 423(c)(1) insured-status requirements through June 30, 2016. R. at 144.

2

was still unable to perform any past relevant work. R. at 150. The ALJ, with VE testimony in support, also found that, given Warren's non-substance abuse RFC, there **are** jobs, existing in significant numbers in the national economy, that Warren can perform. *Id.* Based on these considerations, the ALJ ruled that the substance abuse disorder constituted a contributing factor material to the initial determination of disability. R. at 151. The ALJ then ruled that Warren accordingly was not under a disability from September 1, 2015, through the date of the decision. *Id.* Dissatisfied with the result of the SSA's subsequent administrative process, which denied him relief, Warren turned to federal court for review.

## II.     ANALYSIS

Before reaching the substantive merits of the appeal, the Court must first determine what arguments, if any, Plaintiff's brief properly presented. This case, in terms of its prosecution, has been troubled from the start. *See* DE 6; DE 19; DE 20. After significant coaxing, Plaintiff filed a three-page summary judgment motion, nearly devoid of record citations, argument, and binding case law. DE 22. This Court's Standing Scheduling Order demands more. *See* DE 16 (General Order 13-7). Plaintiff did not provide "a statement of the legal arguments presented at the beginning of the motion." DE 16 at ¶ 3(b) ("The Court will consider only the arguments listed and will not formulate arguments on the parties' behalf. Failure to submit such a statement may constitute grounds for denial of the motion."). Plaintiff did not "provide the Court with specific page citations to the administrative record to support [his] arguments." *Id.* at ¶ 3(c). Despite Plaintiff's attempt to urge the Court to do more, *see* DE 22 at 2 (citing a 2nd Circuit case calling for a "searching investigation"), "[t]he Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments." DE 16 at ¶ 3(c) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)).

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). In *Hollon*, the Circuit denied review of a claimant's generalized arguments regarding the ALJ's treatment of physician opinions. *Hollon*, 447 F.3d at 491. The *Hollon* claimant "failed to city any specific opinion that the ALJ purportedly disregarded or discounted, much less suggest how such an opinion might be impermissibly inconsistent with the ALJ's findings." *Id.*

Turn to Plaintiff's brief. It is filled with such general, conclusory statements. First, Plaintiff states that "the record lacks sufficient evidence to support the Administrative Law Judge's decision." DE 22 at 2. This statement does not point to any specific part of the ALJ's decision, so it is unreviewable. Warren broadly describes the appeal as whether the ALJ "failed to properly consider the medical evidence of record and whether his decision is supported by substantial evidence." *Id.* at 3. His full argument is 1.5 pages without any cite to a specific record page, only to four exhibit entries. Plaintiff argues that "the ALJ did not find this man's behavior or mental illness to be severe." *Id.* at 3. But this is directly contradicted by the ALJ's actual decision. *See* R. at 145–47 (finding the claimant's mental illnesses severe).

The Court notes, critically, that Warren makes no challenge to the required final installment in the ALJ's analysis: that the substance abuse disorders constituted a contributing factor material to the initial determination of disability, per § 404.1535. The Court will not review the ALJ's work on this matter when Warren makes zero effort to challenge it; Warren does not even mention the lynchpin issue. The impact of Plaintiff's waiver infects his view of the ALJ's decision. Without

4

understanding the lens the ALJ properly applied, Warren views the ALJ's remaining decision as illogical. The Court, as described below, disagrees.

Finally, in his lone argument with particulars, Plaintiff argues that the VE's testimony, and the ALJ's RFC determination by implication, noted "only a limited number of jobs when the social interaction was increased to one-half of a workday. This increased non-exertional finding cannot be found nowhere [sic] in the exhibit file." *Id.* at 4. The Court finds this argument barely preserved. First, Plaintiff cites to the four exhibits describing the state psychologists' conclusions. *See id.* at 3. Second, he notes the inconsistency between these opinions and the ALJ's hypothetical and final RFC determination. Finally, Plaintiff states that this "non-exertional finding cannot be found" in the record. *Id.* at 4. These statements are enough to require the Court to examine the ALJ's decision, the cited exhibits, the hearing testimony, and relevant regulations to determine if the ALJ reversibly erred.

Thus, the review is only on the ALJ's tweaking of the RFC with respect to the public interaction point. Plaintiff does not discuss *any* of the medical proof, the hearing record (absent the VE questioning), or the ALJ's particularized analysis. Plaintiff cites no governing cases or law (and the SSR he does cite is completely inapposite to his point, *see* SSR 88-13, 1998 WL 236011, at *1 (SSA July 20, 1998) (Evaluation of Pain and Other Symptoms)). The thinnest of review threads remains; the Court proceeds to examine this strand.

### A. Standard of Review

The Court has carefully considered the ALJ's decision, the transcript of the administrative hearing, and the pertinent administrative record. The Court has turned every apt[2] sheet, primarily focusing on the portions of the record to which the parties specifically cite. *See* DE 16 at ¶ 3(c)

---

[2] That is, those records relevant to the particular issue Warren presents for review.

Judicial review of an ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or revisit questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The Court's inquiry continues: "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where the error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of*

*Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292). The Court "must reverse and remand if the ALJ applied incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004)).

The ALJ, when determining disability, conducts the recognized five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table); *see also Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013) ("The standard for disability under both the DIB and SSI programs is virtually identical."), *adopted* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of

Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ defines RFC and considers whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the production burden shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(iv). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Finally, if the ALJ finds a claimant disabled and notes that drug addiction or alcoholism is present, the ALJ must then "determine whether [the] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013).

### B. The ALJ did not reversibly err.

Plaintiff focuses his attack on the ALJ's hypothetical that increased the "occasional" public interaction to "intermittent" public interaction. DE 22 at 4. The Court finds that this increase, understood through the steps the ALJ was required to take, was not reversible error. Proceeding as he must, the ALJ properly and rationally accounted for the whole record when moving from the initial RFC to the non-substance abuse disorder reformed RFC.

The state experts agree on most points. Critically, the state psychologists found that Warren's substance abuse disorder was a primary and severe disorder. *See* R. at 493 (Exhibit 1A) (Jane Brake, PhD); R. at 506 (Exhibit 2A) (same); R. at 523 (Exhibit 7A) (Alex Guerrero, M.D.);

8

R. at 536 (Exhibit 8A) (same). Despite this, the state psychologists only found Warren to have moderate mental limitations. *See* R. at 494–97, 508–10, 525–27, 538–40. And the state psychologists did not find Warren to be disabled. *See* R. at 498, 511, 529, 542. The experts viewed Warren's schizophrenic and mood disorders as *secondary* to the substance use. *See, e.g.,* R. 496.

During the hearing, the ALJ and counsel for the claimant both claimed to craft their hypotheticals from these medical sources. *See* R. at 280 (Hearing Transcript) ("Namely, the claimant in the second hypothetical can – I'm *adapting* these restrictions from the assessment of the non-examining State Agency psychologist in Exhibit 7-A and 8-A." (emphasis added)); R. at 282 ("Judge, I'm referring to Exhibits 1-A, 2-A, 7-A, and 8-A."). In formulating his hypothetical, the ALJ was not required to *adopt* the state psychologist findings verbatim. *See Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 626 (6th Cir. 2010) ("Further, a hypothetical [may be] incomplete, yet still accurately portray a claimant's limitations."). It is the ALJ that must determine the RFC, based on consideration of the full record. Notably, the ALJ's hypotheticals encompassed both the pre- and post-materiality analyses.

After the hearing, and as part of the ALJ's final decision, the ALJ formulates the RFC determination:

> An ALJ is required to explain how record evidence supports the RFC determination. The RFC Assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistences or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *6–7 (SSA July 2, 1996). Here, the ALJ carefully considered the entire record, treated the view of the state experts thoughtfully, and came to a nuanced RFC determination. R. at 144–46.

As a part of that determination, the ALJ initially gave the state (8A) psychologist "limited weight" because the conclusion that Warren had "moderate" mental limitations "appears inconsistent with the record evidence at present, including the claimant's substance abuse disorders." R. at 146. At this stage, the ALJ found Warren "unable to interact with co-workers or the general public[.]" R. at 145–46. The ALJ found Warren disabled, at that point, to the disagreement of the state psychologists. R. at 147.

The ALJ then, as required, extracted the substance abuse disorder from the analysis to determine drug addiction or alcoholism (DAA) materiality. 20 C.F.R. § 404.1535; *see also Gayheart*, 710 F.3d at 380. The ALJ found that if Warren ceased his poly-substance abuse, he would "retain no more than 'moderate' limitations[.]" R. at 148. The ALJ then assessed the following (post-substance abuse disorder extraction) non-exertional limitations:

> [Warren] could understand, remember, and carry out simple instructions; he could occasionally understand, remember, and carry out detailed instructions; he could maintain attention and concentration for two-periods [sic]; he could interact with the general public on an "intermittent" basis – that is for a total of no more than one-half of the work day; he could adapt to changes if gradual, infrequent, and not basic in scope; and he could perform work with no stringent time targets and no stringent production quotas.

R. at 148.

The ALJ extensively covered the interaction and interplay between Warren's substance abuse and his symptoms. R. at 149–50. The ALJ reviewed and incorporated a field interview that concluded there was "'nothing unusual' with regard to [Warren's] understanding, coherence, concentration, or ability to talk and answer questions during a face-to-face interview." R. at 148

10

(quoting and citing R. at 677). The ALJ fully evaluated the hearing record and found that Warren testified "unpersuasively" with respect to several subjective and objective elements of the substantial paper record. R. at 149.

Finally, in describing the weight given to the state psychologists, at this stage, the ALJ noted:

> The undersigned regarding the opinion evidence has considered the opinion of the State agency psychologist (7A, 8A), who assessed the claimant as noted with essentially "moderate" mental limitations. The opinion of the State agency psychologist appears consistent with the record evidence if the claimant ceased his substance abuse, and the undersigned accordingly affords weight to this opinion in this context.

R. at 150. Evaluating the state expert opinions at this stage, the ALJ was required to view the opinion testimony by disregarding the primacy of the substance abuse disorder and then account for the residuum. The ALJ had already given the testimony limited weight, but once he elided the substance abuse disorder, he found the opinion consistent with the already discussed record and "afford[ed] weight to this opinion *in this context*." *Id.* (emphasis added). An ALJ is not required to mirror opinion testimony when formulating an RFC. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). The ALJ, applying the materiality analysis required by law, properly accounted for the effects of the sequencing and the impact of the full record in constructing the final RFC.

The ALJ logically reduced, in terms of limitations, the exacerbating effects of the primary diagnoses and medically determinable impairments by reflecting the whole record. Considering the clear linkage between substance use and Warren's mental health effects, R. at 149, the record concerning Warren's present functionality, R. at 148 (noting, *e.g.*, shopping, personal care, and

11

regular church attendance), the primacy of the substance abuse diagnoses, *see e.g.,* R. at 493, and the ALJ observing Warren in person, R. at 150, the slight alteration[3] in the RFC was supported by substantial evidence. Given this lawful formulation, the VE responses, and the uncriticized materiality finding, the conclusion of the ALJ must remain undisturbed. Plaintiff does not effectively impugn the sound ALJ analysis, which focused properly on a DAA materiality component, by wholly ignoring the effects of substance use in this record.

I.  **CONCLUSION**

For the reasons stated, the ALJ's opinion survives review. Accordingly, the Court, on the bases discussed, **DENIES** DE 22 and **GRANTS** DE 26. The Court will enter a separate Judgment.

This the 3rd day of January, 2022.



Signed By:
*Robert E. Wier*
United States District Judge

---

[3] The Court notes that the word choice could signify a material inconsistency per SSR 96–8p, all else being equal. "Occasional" is a term of art defined by the Social Security Administration. *See* SSR 83-10, 1983 WL 31251, at *5 (SSA Jan. 1, 1983). "Intermittent" means "coming and going at regular intervals[.]" *Intermittent*, merriam-webster.com, https://www.merriam-webster.com/dictionary/intermittent (last visited Jan. 3, 2022). The Court is unaware of, and Plaintiff certainly does not cite, any fixed SSA definition for the term. These related, but different, terms have been treated as distinct in the Social Security context. *See, e.g., Howard v. Comm'r of Soc. Sec.*, No. 2:16-CV-1104, 2018 WL 852361, at *6 (S.D. Ohio Feb. 14, 2018), *adopted*, 2018 WL 1136927 (S.D. Ohio Mar. 1, 2018); *Colman v. Comm'r of Soc. Sec.*, No. 1:15-cv-596, 2016 WL 3209660, at *2 (S.D. Ohio June 7, 2016). Regardless, the key is in the comparative numbers: one-third to one-half. The ALJ did reframe the temporal, social interaction component here. However, as discussed, the language and numeric change is one the ALJ logically based on his extraction of substance-based symptoms, and substance-based exacerbation, as part of the requisite materiality analysis.